## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

———————————————————————————————————

ATIQ WESTON, a/k/a ATIQ AKEEM
WESTON,                                          Plaintiff,

        v.                                              9:22-CV-621
                                                     (LEK/ATB)

C. BAYNE, et al.,

                                                 Defendants.

———————————————————————————————————
ATIQ WESTON, Plaintiff, pro se
OLIVIA R. COX, Asst. Attorney General, for Defendants

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report-Recommendation by Senior
District Judge Lawrence E. Kahn, pursuant to 28 U.S.C. § 636(b) and Local Rules
N.D.N.Y. 72.3(c).  In this civil rights complaint, plaintiff alleges Eighth Amendment
medical indifference claims against the defendants.  (Dkt. No. 1).  Presently before the
court is the defendants' motion to dismiss the complaint for failure to state a claim
pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 15).  Plaintiff has responded in
opposition to the motion.  (Dkt. No. 17).

## I.    Summary of Complaint

Plaintiff arrived at Upstate Correctional Facility ("C.F.") on February 15, 2022.
(Dkt. No. 1 at CM/ECF 7).  On February 25, 2022, plaintiff wrote a letter to New York
State Department of Corrections and Community Supervision ("DOCCS") Chief
Medical Officer John Morley, in which he explained his medical history and requested

1

MRI and EEG scans.  (Dkt. No. 1 at CM/ECF 8).  In the letter, plaintiff further explained that he was experiencing "nerve damage, dizziness, and chronic headaches (migraines)" and that he had not received "any immediate medical evaluations[.]"  (*Id.* at CM/ECF 9-10).  Plaintiff alleges, however, that he was seen at some point by a medical nurse during a morning sick call and the nurse informed him he would be scheduled to see a medical provider in the future.  (*Id.* at CM/ECF 11).

On March 14, 2022, plaintiff filed a grievance complaint with defendant Incarcerated Grievance Program[1] ("IGP") Supervisor Bayne, in which plaintiff asserted he was not "receiving prioritized medical care for very serious health conditions."  (Dkt. No. 1 at CM/ECF 12).  Plaintiff further complained that his headaches were beginning to cause intense pressure in his head, his daily dizziness was continuing, and his worsening nerve damage was causing daily tremors extending from his head to his stomach.  (*Id.*).  Plaintiff asserted that he had not been "seen by a registered nurse or doctor for . . . almost one month (30 days)."  (*Id.* at CM/ECF 13).  He requested an immediate evaluation by medical personnel, EEG scans, and MRI scans.  (*Id.* at CM/ECF 14).

On March 31, 2022, plaintiff contacted the Office of Special Investigation, by telephone, to make a medical negligence complaint which included "a summary of the medical negligence history and existing symptoms to [sic]."  (*Id.* at CM/ECF 14).  On the same day, the Incarcerated Grievance Review Committee[2] ("IGRC") held a hearing

---

[1]  The program was formerly known as the "Inmate Grievance Program," but has recently been renamed.
[2] The program was formerly known as the "Inmate Grievance Review Committee," but has recently been renamed.

concerning plaintiff's medical negligence complaint. (Dkt. No. 1 at 14). The IGRC reviewed plaintiff's medical records and determined his complaints were chronic. (Dkt. No. 1-2, Ex. 4). They noted plaintiff had "been seen and assessed for this complaint on [two] occasions since arriving at Upstate." (*Id.*). They further noted plaintiff "has a pending appointment to see the provider in the near future." (*Id.*). On April 5, 2022, plaintiff appealed this determination to the Superintendent of Upstate C.F., defendant Uhler. (*Id.*).

On April 8, 2022, defendant Nurse Administrator ("NA") Downer visited plaintiff's cell to investigate plaintiff's March 31, 2022 complaint. (Dkt. No. 1 at CM/ECF 16). Plaintiff informed NA Downer that his medical conditions "still exist[ed] and [were] worsening." (*Id.*). NA Downer asked plaintiff "whether [he had] been filing any sick call requests" and plaintiff informed her he had filed regular sick calls, emergency sick calls, and written letters. (*Id.*). Plaintiff requested MRI/EEG scans from NA Downer. (*Id.*). On April 10, 2022, plaintiff wrote a follow-up letter to NA Downer reiterating his health concerns and again requesting MRI/EEG scans. (*Id.*).

On April 12, 2022, Superintendent Uhler denied plaintiff's April 5, 2022 grievance appeal. (Dkt. No. 1 at CM/ECF 17). Uhler found "no evidence of malfeasance" and noted plaintiff had "been referred to the Facility Provider." (*Id.* at CM/ECF 18). On April 13, 2022, plaintiff appealed the grievance denial to the Central Office Review Committee ("CORC"). (*Id.*). Plaintiff states he has not yet received a response from CORC regarding this appeal. (*Id.* at CM/ECF 21).

On April 26, 2022, plaintiff called the Office of Special Investigations ("OSI") to complain about his medical care. (*Id.* at CM/ECF 19). During the phone call, plaintiff

"explained his worsening medical conditions along with a description of the daily dizziness & nerve tremors that feel like shivers in his head, chest and stomach that occur daily." (Dkt. No. 1 at 19). On May 9, 2022, one of plaintiff's family members also lodged a complaint with OSI.[3]

On May 20, 2022, NA Downer visited plaintiff's cell again to investigate a medical negligence complaint. (*Id.* at CM/ECF 20). Plaintiff informed NA Downer that he was still experiencing symptoms and had "not been scheduled for a medical call-out to see a medical provider since [his] arrival at Upstate C.F. on 02/15/2022." (*Id.*). NA Downer then informed plaintiff that "'she' would 'personally' ensure that [he] was scheduled to see a medical provider very soon." (*Id.*).

## II.    **Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted);

---

[3] This complaint also involved allegations of excessive use of force not relevant to the present case.

4

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 71 (2d Cir. 1995).  The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam).

   In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc.*, 62 F.3d at 72 (holding the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions.  *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing inter alia *County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)).  *See also Combier Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Servs., LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties).

III.   **Discussion**

    A.   **Legal Standards**

        1.   **Medical Deliberate Indifference**

In order to state a claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

        a.   **Objective Element**

There is a two-part inquiry to determine whether an alleged deprivation is "objectively serious." *Benjamin v. Pillai*, 794 F. App'x 8, 11 (2d Cir. 2019) (citing *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmate's health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Salahuddin*, 467 F.3d at 279-80 (citing *Farmer v. Brennan*, 511 U.S. 825, 844-47 (1994)).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Benjamin*, 794 F. App'x at 11 (citing *Salahuddin*, 467 F.3d at 280). The court must examine how the care was inadequate

6

and what harm the inadequacy caused or will likely cause the plaintiff. *Salahuddin*, 467 F.3d at 280 (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith*, 316 F.3d at 185-86). However, in cases where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Benjamin*, 794 F. App'x at 11. The court in *Benjamin* reiterated that although courts speak of a "serious medical condition" as the basis for a constitutional claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Benjamin*, 794 F. App'x at 11 (citing *Smith*, 316 F.3d at 185).

### b.    Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Benjamin*, 794 F. App'x at 11 (citing *Hathaway v. Coughlin*, 511 U.S. 825, 553 (2d Cir. 1996)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Salahuddin*, 467 F.3d at 280 (citing *Farmer*, 511 U.S. at 835-37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition, that the charged official possessed "a state of mind that is the equivalent of criminal recklessness." *Benjamin*, 794 F. App'x at 11 (quoting *Hathaway*, 99 F.3d at 553).

7

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Abreu v. Lipka*, 778 F. App'x 28, 32 (2d Cir. 2019) (quoting *Smith*, 316 F.3d at 184). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer*, 511 U.S. at 837). The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court in *Salahuddin* stated the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin*, 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Riddick v. Maurer*, 730 F. App'x 34, 38 (2d Cir. 2018) (quoting *Chance*, 143 F.3d at 703). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

8

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.*; *see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

### 2.    Personal Involvement/Respondeat Superior

The Second Circuit recently clarified the standard for personal involvement of individuals in a § 1983 action. *See Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). Pursuant to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Second Circuit in *Tangreti* made clear that in order to attach liability to an individual, regardless of supervisory status, a plaintiff must

> plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . . "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676). Quoting a Tenth Circuit case, the *Tangreti* court stated that "after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that as a supervisor he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he

9

alleges." *Id.* (alterations in original) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (internal quotation marks omitted) (emphasis added, other citations omitted). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

### B.     Analysis

Defendants argue that plaintiff failed to sufficiently allege their personal involvement in the purported constitutional violations set forth in the complaint. (Defs.' Mem. at 5-8). For the reasons stated below, the court agrees that plaintiff failed to allege personal involvement with respect to defendants Bayne, Uhler, and Morley, and dismissal is therefore warranted as to these defendants. However, the court concludes that plaintiff did sufficiently allege the personal involvement of defendant NA Downer for purposes of initial pleading.

Plaintiff alleges that defendant Bayne was the IGP Supervisor at Upstate C.F. (Dkt. No. 1-3 at CM/ECF 12). On March 14, 2022, plaintiff alleges he filed a grievance complaint with Bayne, in which plaintiff outlined his medical issues[4] and requested MRI/EEG scans. (Dkt. No. 1 at CM/ECF 12-13). He specifically alleges that Bayne "failed to properly consider, investigate and address the issues that [were] presented to the IGRC office." (Dkt. No. 1-3 at CM/ECF 12). Plaintiff asserts that Bayne "chose to

---

[4] Plaintiff alleges his letter complained about "very bad headaches (migraines) to where I begin to feel intense pressure in my head, daily dizziness, and worsening nerve damage to where I now feel tremors (shaking) in nerves that extend from my head to my stomach, on a daily basis." (Dkt. No. 1 at CM/ECF 12).

10

instead intentionally ignore the seriousness of plaintiff's medical conditions and make him wait for treatment." (Dkt. No. 1-3 at CM/ECF 12). Plaintiff does not allege any other involvement by defendant Bayne.

Plaintiff further alleges that, on March 17, 2022, defendant Uhler, the Superintendent of Upstate C.F., denied plaintiff's grievance appeal after reviewing plaintiff's medical record and finding "no evidence of malfeasance." (Dkt. No. 1-1, Ex. 6). In his response, Uhler also noted plaintiff "has been referred to the Facility Provider." On April 5, 2022, plaintiff appealed another grievance to Superintendent Uhler.[5] (Dkt. No. 1-1, Ex. 4). Plaintiff alleges that Uhler was negligent in his supervision of his subordinates but does not allege any actionable conduct specifically performed by Uhler. (Dkt. No. 1-3 at CM/ECF 12-13).

Even under the broader, pre-*Tangreti* standards with respect to personal involvement, playing a role in the administrative denial of a prison inmate's grievance was insufficient to establish personal involvement under section 1983, particularly when the grievance involved medical care and the reviewer has no medical training. *See, e.g.*, *Hardy v. Diaz*, No. 9:08-CV-1352 (GLS/ATB), 2010 WL 1633379, at *7 & n.13 (N.D.N.Y. Mar. 30, 2010) (citing inter alia *Manley v. Mazzuca*, No. 01-CV-5178, 2007 WL 162476 at *10 (S.D.N.Y. Jan. 19, 2007) (collecting cases)), *report and recommendation adopted*, 2010 WL 1633390 (N.D.N.Y. Apr. 21, 2010); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) ("[A] prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners, and cannot be held to have

---

[5] Uhler's response to the second grievance complaint was not included in the submissions to the court.

been 'personally involved' if he does so" by affirming denial of a grievance against the two doctors for failing to provide care.).[6]  Particularly under the current *Tangreti* standards in the Second Circuit, IGP Supervisor Bayne and Superintendent Uhler cannot be found to be personally involved in the alleged denial of medical care by virtue of their role in addressing plaintiff's grievance.  *See, e.g.*, *Brown v. Dep't of Corr.*, No. 3:16-CV-00376, 2021 WL 124417, at *17-18 (D. Conn. Jan. 13, 2021) (plaintiff's claim that Warden Maldonado's signature appears on plaintiff's grievance denial regarding his mental health treatment is insufficient to establish that Maldonado's "'own individual actions' rises to a Constitutional violation under the Eighth Amendment") (citing *Tangreti*, 983 F.3d at 612).

Plaintiff next alleges that, on February 25, 2022, he wrote a letter to defendant Morley, the Chief Medical Officer of DOCCS, where he explained his medical history and requested MRI and EEG scans.  (Dkt. No. 1 at CM/ECF 8).  The crux of plaintiff's claims against Dr. Morley is that he was liable for failing to sufficiently remedy the wrongs of their subordinates, despite having received notice from plaintiff of the alleged misconduct.  These contentions suggest the pre-*Tangreti* standard for establishing personal involvement of a supervisory official--contemplating personal involvement where an official, after being informed of the violation through report or appeal, failed to remedy the wrong.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.

---

[6] *See also Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (finding prison superintendent with no medical training who deferred completely to a prison doctor in ruling on a grievance regarding medical care, while perhaps negligent, was not "deliberately indifferent"); *Lewis v. Cunningham*, No. 05-CV-9243, 2011 WL 1219287, at *5 (S.D.N.Y. Mar. 14, 2011) ("[A]n administrator's response to a medical issue is insufficient to establish deliberate indifference if the administrator himself never provided medical care, since prison administrators may defer to medical staff regarding medical treatment of inmates.") (internal citation omitted), *aff'd*, 483 F. App'x 617 (2d Cir. 2012).

1995).  In the wake of *Tangreti*, these allegations are insufficient to establish personal

involvement of a supervisory official,[7] and plaintiff has otherwise failed to allege facts

plausibly suggesting Dr. Morley's personal involvement in the alleged conduct giving

rise to plaintiff's Eighth Amendment claims. *See, e.g.*, *McTerrell v. Koenigsmann*, No.

18-CV-1028, 2021 WL 5772484, at *11 (W.D.N.Y. Aug. 18, 2021) (plaintiff only

alleges that he filed complaints about his medical treatment with the DOCCS medical

director; "[w]ithout more, that is insufficient to adequately plead [the medical

director's] subjective culpability" and personal involvement under *Tangreti*), *report and

recommendation adopted*, 2021 WL 4549168 (W.D.N.Y. Oct. 5, 2021); *Gardner v.

Koenigsmann*[8], No. 21-CV-10185, 2022 WL 1058498, at *2 (S.D.N.Y. Mar. 30, 2022)

(the allegation that plaintiff complained to the DOCCS medical director at some point

after not receiving a surgical consultation is insufficient, under *Tangreti*, to implicate

the medical director in any constitutional violation).

     However, construing the complaint in a light most favorable to the non-moving

party, dismissal for lack of personal involvement is not warranted as to defendant NA

Downer at this juncture.  Plaintiff alleges NA Downer was a nurse administrator at

Upstate C.F. who investigated plaintiff's medical negligence complaints.  (Dkt. No. 1 at

CM/ECF 16, 20).  As part of her investigation, NA Downer personally visited plaintiff

in his cell on two separate occasions.  (Dkt. No. 1 at CM/ECF 16, 20).  During her first

---

[7] *See Hendrix v. Annucci*, No. 9:20-CV-0743 (GTS/TWD), 2021 WL 4405977, at *14 (N.D.N.Y. Sept. 27, 2021) (finding no personal involvement where plaintiff's theory of supervisory liability relied on the factors outlined in *Colon*, and recognizing the new standard for establishing personal liability under *Tangreti*).

[8] The caption uses the spelling of the party name as *Koeningsman* as opposed to the correct spelling of *Koenigsmann*.

13

visit with plaintiff on April 8, 2022, she "inquired as to whether [plaintiff's] medical conditions still existed." (*Id.*). Plaintiff alleges that he not only informed NA Downer that his conditions still existed, but that they were worsening. (*Id.*). Plaintiff alleges that NA Downer then "made notes on a writing pad concerning [his] requests for an MRI scan and EEG scan for [his] brain." (*Id.*). According to plaintiff's allegations, NA Downer returned to his cell on May 20, 2022, at which time she "personally" ensured that plaintiff would see a medical provider very soon. (*Id.* at CM/ECF 20).

The mere receipt, review, and response to an inmate's grievance does not rise to the level of personal involvement necessary to state a claim, and "allegations that a supervisor did not do enough *after* a constitutional violation has already occurred is not enough to show personal involvement of the supervisor in the violation of a prisoner's constitutional rights." *Jordan v. Gifford*, No. 3:19-CV-1628, 2022 WL 3106965, at *26 (D. Conn. Aug. 4, 2022) (citing inter alia *Lopez v. Chappius*, No. 6:17-CV-06305, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) (noting that "the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement of a supervisor in the denial of a constitutional right")); *see also Thompson v. New York State Corr. & Cmty. Supervision*, No. 22-CV-6307, 2022 WL 4562318, at *7 (W.D.N.Y Sept. 29, 2022) (finding no personal involvement where a nurse administrator simply reviewed the inmate's medical records and responded to the inmate's complaint). However, to the extent NA Downer is alleged to have visited plaintiff on multiple occasions, inquired into the status of his medical condition, and reassured plaintiff that he would be treated by a medical provider, these allegations are sufficient, at this stage of the proceeding, to state a plausible claim that NA Downer was deliberately

indifferent to plaintiff's medical condition. *See Gilhooly v. Quiros,* No. 3:21-CV-140, 2022 WL 252410, at \*9 (D. Conn. Jan. 27, 2022) (denying motion to dismiss complaint against defendant Nurse Brennan, Health Service Grievance Coordinator, where plaintiff alleged that Nurse Brennan "visited plaintiff to discuss" his medical grievances, and purportedly ignored and/or interfered with the grievance process).

 **WHEREFORE**, based on the findings above, it is

 **RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 15) based upon Fed. R. Civ. P. 12(b)(6) be **GRANTED IN PART AND DENIED IN PART**, and it is further

 **RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 15) be **GRANTED**, and the plaintiff's complaint **DISMISSED WITHOUT PREJUDICE**, as to defendants **Bayne, Uhler, and Morley**, and it is

 **RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 15) be **DENIED**, as to plaintiff's Eighth Amendment medical indifference claims asserted against defendant **Downer**.

 Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 28, 2023

Andrew T. Baxter
U.S. Magistrate Judge

15